NOT DESIGNATED FOR PUBLICATION

No. 128,515

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

RYAN J. KINGFISHER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Ryan Kingfisher was convicted of driving under the influence (DUI) of alcohol after an officer observed him struggling to maintain his lane and a second officer detected signs of intoxication when Kingfisher exited his vehicle. Kingfisher appeals the district court's denial of his motion to suppress the breath test result of .164, challenging the constitutionality of the stop and arrest. After carefully reviewing the record and the parties' arguments, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Kingfisher with DUI, third offense, and interference with law enforcement based on an encounter that began as a traffic stop on April 17, 2023. As the case progressed, Kingfisher sought to suppress all evidence derived from the stop and subsequent arrest, arguing the officers lacked reasonable suspicion to detain him and probable cause to arrest him for DUI.

The district court held an evidentiary hearing on the suppression motion, where two officers testified. The first, Officer John Williams III with the Prairie Band Tribal Police Department, recounted that he was patrolling the boundary of the reservation when he observed a dark-colored Jeep cross the center line of the road; the Jeep also failed to use a turn signal when changing lanes. Officer Williams radioed the Jackson County Sheriff's Department when the Jeep left the reservation (and Officer Williams' jurisdiction). But Officer Williams continued to follow the Jeep and observed a Jackson County deputy engage in discussions with the driver—whom Williams identified at the hearing as Kingfisher—after Kingfisher parked on Main Street in Mayetta. Officer Williams testified that he could not provide any footage from the dashcam to support his observations as the video had been "purged"—or deleted—and was no longer available.

The State's second witness was Deputy Travis DeBarge with the Jackson County Sheriff's Office. Deputy DeBarge testified that dispatch had directed him to investigate "a possible intoxicated person leaving the casino" in a grey Jeep; dispatch had also reported that the driver was having trouble maintaining a lane. Deputy DeBarge located a grey Jeep with a tribal police vehicle following it. He watched the Jeep turn onto Main Street in Mayetta and park. The driver, who Deputy DeBarge identified as Kingfisher, had left his vehicle and was walking down Main Street when Deputy DeBarge approached and asked whether he had been at the casino. The officer testified Kingfisher became "erratic, loud, kind of defensive"; the officer smelled alcohol on Kingfisher's breath; Kingfisher's

eyes were bloodshot; and Kingfisher stated he had consumed alcohol approximately eight hours earlier.

Deputy DeBarge asked Kingfisher to submit to field sobriety tests. Kingfisher refused. Deputy DeBarge then arrested him for DUI.

Based on this testimony, the district court denied the motion to suppress. The court found the traffic violations established reasonable suspicion for the stop. The court also found that the totality of the circumstances established probable cause for the arrest: Deputy DeBarge had smelled alcohol on Kingfisher's breath; Kingfisher admitted consuming alcohol, though he claimed it had been many hours earlier; Kingfisher's eyes were red and bloodshot; he dropped his license on the ground; he refused to submit to field sobriety tests; and his interactions with Deputy DeBarge "could be fairly described as erratic, obnoxious, argumentative, and belligerent."

Kingfisher waived his right to a jury trial, and the case proceeded to a bench trial on stipulated facts:

- "Kingfisher drove a vehicle on April 17, 2023 in Jackson County, Kansas";

- "Within three hours of driving this vehicle, Mr. Kingfisher submitted to a breath test on the Intoxilyzer. The breath test result was .164 grams of alcohol per 210 liters of breath";

- "Kingfisher timely objects to the admission of the breath test results . . . for the purpose of preserving for appeal on the bases set forth in Defendant's Motion to Suppress Fruits and Instrumentalities of Unlawful Detention and Arrest Filed on December 8, 2023 and denied by the Court by written order on January 16, 2024."

3

In exchange for Kingfisher's stipulation, the State agreed to dismiss the charge for interference with law enforcement, leaving only the DUI charge.

The district court found Kingfisher guilty of DUI, third offense, and sentenced him to 30 days in county jail followed by 24 months' probation, with an underlying sentence of 18 months in prison and 24 months of postrelease supervision. Kingfisher appeals.

DISCUSSION

Kingfisher challenges the district court's denial of his motion to suppress the evidence stemming from the stop and arrest—namely, the breath test result of .164—on two grounds: He asserts that Deputy DeBarge lacked reasonable suspicion to stop him on Main Street, and he claims that the deputy lacked probable cause to arrest him for DUI. We find neither argument persuasive.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011).

"Whenever an officer interacts with a person in a public place, the rights protected by the Fourth Amendment are tested." *State v. Ellis*, 57 Kan. App. 2d 477, 481, 453 P.3d 882 (2019), *aff'd* 311 Kan. 925, 469 P.3d 65 (2020). The principles we apply to safeguard those rights vary with the type of interaction. 57 Kan. App. 2d at 481-82. Kansas appellate courts have recognized four types of interactions between officers and members

4

of the public: (1) voluntary encounters; (2) investigatory detentions; (3) welfare checks or public-safety stops; and (4) arrests. 57 Kan. App. 2d at 482 (citing *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 [2016]).

To deter law enforcement from violating the Fourth Amendment, "courts hearing criminal cases exclude—or suppress—evidence found as a result of an unlawful search or seizure." *Ellis*, 57 Kan. App. 2d at 482. This exclusion applies both to primary evidence—evidence obtained as a direct result of an illegal search or seizure—and to evidence later discovered that derived from the unlawful search or seizure. 57 Kan. App. 2d at 482; *Utah v. Strieff*, 579 U.S. 232, 237, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016).

We review the factual underpinnings of a district court's ruling on a motion to suppress for substantial competent evidence and its ultimate legal conclusion de novo. *Ellis*, 57 Kan. App. 2d at 482 (citing *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 [2014]). Substantial competent evidence "is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). But appellate courts do not reweigh the evidence. *State v. Cash*, 313 Kan. 121, 126, 483 P.3d 1047 (2021); see *Gannon*, 298 Kan. at 1175-76 ("In determining whether substantial competent evidence supports the district court findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence."). Although the defendant initiates the constitutional challenge by filing a motion to suppress, the State carries the burden of proving the challenged police conduct was permissible. *Ellis*, 57 Kan. App. 2d at 482.

1. *Deputy DeBarge had reasonable suspicion to detain Kingfisher.*

Kingfisher first argues that the State did not present substantial competent evidence that Deputy DeBarge had reasonable suspicion to detain him.

An officer may conduct an investigatory detention if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is committing, or is about to commit a crime. K.S.A. 22-2402(1); *State v. Pollman*, 286 Kan. 881, 889, 190 P.3d 234 (2008). Reasonable suspicion requires an officer to have "'a particularized and objective basis for suspecting the person stopped is involved in criminal activity.'" 286 Kan. at 890.

The reasonable-suspicion standard is less demanding than that of probable cause "'and requires a showing considerably less than preponderance of the evidence.'" *Pollman*, 286 Kan. at 890 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 [2000]). Yet "the Fourth Amendment requires at least a minimal level of objective justification for making the stop," and the "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Wardlow*, 528 U.S. at 123-24. We consider the totality of the circumstances when determining whether there was reasonable suspicion to engage in the investigatory detention. *Pollman*, 286 Kan. at 890.

Kingfisher's arguments for why the State did not present substantial competent evidence that Deputy DeBarge had reasonable suspicion to detain him are that Deputy DeBarge did not personally witness him commit the traffic violations, Officer Williams' first-hand observations were "suspect" because there was no dashcam footage retained from April 17, and Officer Williams did not write a report until eight months after the events occurred. We are unpersuaded.

As the State points out, and Kingfisher acknowledges, we have long imputed the knowledge of one officer to all fellow officers for the purpose of determining whether reasonable suspicion exists for a stop. *State v. Niblock*, 230 Kan. 156, 161, 631 P.2d 661 (1981). In other words, "one officer may stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand

knowledge of the facts that would provide the necessary level of suspicion to permit the given action." *State v. Miller*, 49 Kan. App. 2d 491, 497, 308 P.3d 24, *rev. denied* 298 Kan. 1206 (2013).

Here, Deputy DeBarge relied upon objective information that Kingfisher had committed traffic offenses—specifically, that Officer Williams had seen Kingfisher's Jeep drift outside a lane and not signal before changing lanes. And Deputy DeBarge had an objective reason to believe that Kingfisher was the driver in question, as the Jeep matched Officer Williams' description and was being followed by Officer Williams' tribal police car. This evidence was sufficient to support the district court's finding that there was a particularized and objective basis for suspecting Kingfisher committed the traffic violations described.

Kingfisher attempts to undermine this evidence by contesting the validity of Officer Williams' recollections at the suppression hearing, but we do not reweigh evidence on appeal. *Cash*, 313 Kan. at 126; *Gannon*, 298 Kan. at 1176. The sole question before us is whether there was legal and relevant evidence that a reasonable person might accept as sufficient to support the conclusion that Deputy DeBarge had reasonable suspicion to engage Kingfisher in an investigatory detention. And based on the evidence presented at the suppression hearing, we find that there was.

2. *Deputy DeBarge had probable cause to arrest Kingfisher for suspicion of DUI.*

Kingfisher next argues that the state did not present substantial competent evidence that Deputy DeBarge had probable cause to arrest him on suspicion of DUI.

Under the Fourth Amendment, before making a wantless arrest, officers must first develop probable cause. *State v. Green*, 320 Kan. 539, 561-62, 570 P.3d 1189 (2025). Probable cause exists where the facts and circumstances known to the arresting officer—

based on reasonably trustworthy information—are sufficient to permit a reasonably cautious person to believe that an offense has been or is being committed. *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). Under this analysis, we look to the totality of the circumstances, viewed through the lens of an objectively reasonable police officer. 304 Kan. at 994.

In denying Kingfisher's motion to dismiss, the district court found, based on the totality of the circumstances, that Deputy DeBarge developed probable cause to arrest Kingfisher for DUI. The court pointed to facts showing that Deputy DeBarge smelled alcohol on Kingfisher's breath; Kingfisher admitted to drinking alcohol (though he claimed it was many hours ago); his eyes were red and bloodshot; he dropped his license on the ground; he refused to take field sobriety tests; and his "interactions with Deputy DeBarge could be fairly described as erratic, obnoxious, argumentative, and belligerent."

Kingfisher focuses on the district court's finding that he dropped his license on the ground, contending that neither Deputy DeBarge nor Officer Williams testified to that fact and no video footage was introduced that might have shown such action. Kingfisher then provides possible explanations for other facts: his bloodshot eyes could have been caused by fatigue, and his agitated nature could have stemmed from general anger at being detained, rather than caused by intoxication. We agree with Kingfisher that the district court erred in its finding regarding the license—a fact not supported by the evidence. But omitting this finding, the totality of the circumstances still shows that there was probable cause to believe Kingfisher had driven his Jeep while under the influence of alcohol.

Deputy DeBarge was dispatched to investigate a report of a possibly intoxicated driver of a dark-colored Jeep. He watched Kingfisher park on Main Street and exit the Jeep. Deputy DeBarge then personally witnessed signs that could show intoxication— smelling alcohol on Kingfisher's breath, observing bloodshot eyes, and witnessing erratic,

argumentative, and belligerent behavior. On top of these observations, Kingfisher admitted that he had consumed alcohol earlier in the day and refused to submit to any field sobriety tests. Kansas appellate courts have found each of these observations—when combined with the totality of the circumstances—to be factors that could amount to probable cause that a driver has committed the crime of DUI. See, e.g., *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 518, 242 P.3d 1179 (2010) (bloodshot eyes; admission to drinking); *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 417, 233 P.3d 286 (2010) (odor of alcohol); *State v. Garcia-Oregel*, No. 125,536, 2023 WL 3910587, at *7 (Kan. App.) (unpublished opinion) (refusal to perform roadside field sobriety tests), *rev. denied* 317 Kan. 847 (2023); *State v. Harbacek*, No. 110,664, 2014 WL 3843506, at *3 (Kan. App. 2014) (unpublished opinion) (belligerent, aggressive, or irrational conduct), *rev. denied* 302 Kan. 1015 (2015).

We find the State presented substantial competent evidence that Deputy DeBarge had a reasonable belief Kingfisher drove the Jeep while intoxicated, thus giving him probable cause to place Kingfisher under arrest for suspicion of DUI. Because the State presented substantial competent evidence of both reasonable suspicion and probable cause, the district court did not err in denying Kingfisher's motion to suppress. And because we find no error, we decline to reach Kingfisher's final argument—that the exclusionary rule and fruit of the poisonous tree doctrine required the district court to suppress the evidence.

We affirm the district court's judgment.

Affirmed.

9